UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLINDA LOU CIESLA,

       Plaintiff                           Civil Action No. 12-15092

v.                                  HON.  LAWRENCE P. ZATKOFF
                                    U.S. District Judge
                                    HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Carlinda Lou Ciesla brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

On August 28, 2008, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning June 1, 1994 (Tr. 160).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on March 29, 2011 before Administrative Law Judge ("ALJ") Joseph P. Donovan Sr. (Tr. 27).  Plaintiff, represented

-1-

by attorney Mikel Lupisella, testified by teleconference from Mt. Pleasant, Michigan (Tr. 32-33, 37-40). Medical Expert ("ME") Dr. Ellen Rozenfeld also testified (Tr. 33-40). On April 22, 2011, ALJ Donovan found that between June 1, 1994 and the date last insured ("DLI") of December 31, 1999, Plaintiff was not entitled to DIB (Tr. 22-23). On September 19, 2012, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the final decision on November 17, 2012.

## BACKGROUND FACTS

Plaintiff, born January 2, 1953, was 46 on the DLI of December 31, 1999 (Tr. 23, 160). She obtained a GED in 1970 (Tr. 186) and worked previously as a retail clerk (Tr. 182). She alleges disability due to memory problems, anxiety, heart palpitations, and depression (Tr. 181).

### A.    The Hearing Testimony

*The hearing began with brief testimony by Plaintiff, after which time Plaintiff and ME Rozenfeld testified intermittently.*

Plaintiff testified that she could not remember exactly when she last worked, but denied working since 1994 (Tr. 32). Dr. Rozenfeld noted that records created between June 1, 1994 and December 31, 1999 state only that Plaintiff received an antidepressant and anti-anxiety medication (Tr. 34). She noted the absence of mental status exams or functional assessments for the period between 1994 and the end of 1999 (Tr. 34). She acknowledged that the records from that period "suggest[ed]" a diagnosis of depression (Tr. 34). She noted

-2-

that while records created in 2008 and 2009 indicate diagnoses of depression and "a panic disorder with agoraphobia," the records created before the DLI of December 31, 1999 indicated only that Plaintiff experienced depression (Tr. 34).

Dr. Rozenfeld acknowledged that December, 2008 records by psychiatrist Jainullabdin Syed, M.D. supported his diagnoses of depression and panic disorder with agoraphobia, but noted that Plaintiff's more recent psychological condition was exacerbated during 2008 to 2010 by "significant stressors" such as a diagnosis with a serious medical condition (Tr. 36). She opined that Plaintiff's condition "may have diminished" since the December, 1999 expiration of benefits (Tr. 37).

Plaintiff testified that between the June 1, 1994 alleged onset of disability and the DLI, she stayed at home all day with the shades closed (Tr. 37). She alleged sleep disturbances (Tr. 37). She said that she declined to apply for benefits earlier because her husband provided for the family and she did not want to accept disability benefits (Tr. 38). As a result of depression, she lacked the motivation to bathe or groom herself, adding that her mother, grandmother, aunt, and uncle experienced the same condition (Tr. 38). She estimated that she received treatment from Dr. Syed up to the frequency of once a week between 1994 and the end of 1999 (Tr. 40). She testified that she was unable to procure her mental health treating records because they had been destroyed (Tr. 40). She stated that she now received psychotropic medication from her family doctors and coped with her condition by "stay[ing] home" (Tr. 40). Plaintiff reported that she was admitted for inpatient psychiatric treatment in 1987 but was discharged after three days because "the place scared

-3-

[her] to death" (Tr. 41).

**B.    Medical Evidence[1]**

**1. Treating Sources**

September, 1995 records by Plaintiff's family physician note that Plaintiff had been prescribed Zoloft by Dr. Syed[2] (Tr. 211).  October, 1998 records show that Plaintiff was treated for allergies (Tr. 206).  A December, 1998 mammography was negative for malignancy (Tr. 209).  January, 1999 records state that allergic symptoms were improved with medication (Tr. 207).   June, 1999 allergy treatment records note that Plaintiff was diagnosed with major depression in 1987 but no longer received treatment from Dr. Syed (Tr. 215).  Plaintiff continued to receive weekly allergy shots through the end of 1999 (Tr. 214-217).  August, 2000 ophthalmology  records state that Plaintiff experienced both near and farsightedness with a "suspect[ed]" diagnosis of glaucoma (Tr. 208).

January, 2002 hemorrhoid surgery was performed without complications (Tr. 221).

---

[1]Records created significantly after the DLI are included for background purposes only.

[2]

It is unclear whether the current treating source, "Dr. Syed" was the same Dr. Syed who treated Plaintiff before the date last insured.  The hearing transcript refers to the physician treating Plaintiff between 1994 and 1999 as "Dr. Sayed" at certain points in the hearing (Tr. 31, 39) and "Dr. Syed" at others (Tr. 34).  The hearing transcript also refers to the physician treating Plaintiff after the DLI as "Dr. Sayed" at some points (Tr. 35) and "Dr. Syed" at others (Tr. 34).  The medical records show that the names of both sources were actually spelled "Dr. Syed."  To confuse matters further, Plaintiff's counsel refers to the earlier source as "Dr. Sayad." *Plaintiff's Brief* at 9.  Nonetheless, the absence of a current or retroactive assessment of Plaintiff's condition *prior to the DLI* moots the question of whether the earlier and current source were actually one individual.

November and December, 2008 treating notes by Dr. Syed indicate a diagnosis of depression and agoraphobia (Tr. 246).  Dr. Syed noted that Plaintiff's mother had passed away in 2003 (Tr. 246).  Plaintiff reported that she "never felt good" after 1987 and had not worked since 1994 (Tr. 246).  March, 2010 treating notes state that Plaintiff's son had been diagnosed with bipolar disorder (Tr. 242).

### 2.  Non-Treating Sources

In October, 2008, Wayne Hill, Ph.D. completed a non-examining Psychiatric Review Technique of the treating records, finding the absence of a medically determinable mental impairment for the period ending on December 31, 1999 (Tr. 227).  Dr. Hill noted that Plaintiff was unable to provide psychiatric treating records for the period in question (Tr. 239).

### C.    The ALJ's Decision

The ALJ ended his inquiry at Step Two of the sequential analysis, determining that while Plaintiff experienced the medically determinable impairment of a depressive disorder between June 1, 1994 and December 31, 1999, she had failed to establish that the condition created workplace limitations (Tr. 20).

The ALJ accepted Plaintiff's testimony that she received inpatient psychiatric treatment in 1987 and during the relevant period  treated with Dr. Syed up to once every week (Tr. 22).  Citing records created by Plaintiff's family physician, he reasoned that the treating source would not have prescribed antidepressant medication unless he "observed medically acceptable signs of depression" (Tr. 22).

The ALJ nonetheless found that Plaintiff's testimony regarding the severity of her symptoms for the relevant period was unsupported by other evidence (Tr. 22). He accorded "great weight" to Dr. Rozenfeld's finding that treating records for the relevant period were insufficient to establish a severe impairment (Tr. 23). He noted that her findings were consistent with Dr. Hill's non-examining conclusions (Tr. 23).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

-6-

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Substantial Evidence Supports the ALJ's Determination

Plaintiff makes two overlapping arguments in favor of remand.  First, she contends that the ALJ accorded undue weight to Dr. Rozenfeld's opinion.  *Plaintiff's Brief* at 7-9, *Docket #10.*   Second, she argues that the ALJ's acknowledgment of the 1987 inpatient treatment (considered alongside references to depression in the 1994 to 1999 records and

-7-

current records showing diagnoses of depression, anxiety, and agoraphobia)  establish that

the severity of her symptoms were "relentless."  *Id.* at 10.

"In order to establish entitlement to disability insurance benefits, an individual must

establish that he became 'disabled' prior to the expiration of his insured status." *Moon v.*

*Sullivan*  923 F.2d 1175, 1182 (6th Cir. 1990)(citing 42 U.S.C. § 423(a) and (c)).  "'The

existence of a medically determinable impairment of the required duration must be

established by medical evidence consisting of clinical signs, symptoms and/or laboratory or

psychological test findings.'" *Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(B)).

The ALJ did not err in according "great weight" to Dr. Rozenfeld's finding that the

records predating the DLI did not establish the presence of a severe impairment.[3]  To be sure,

medical records created several years after the 1999 expiration of benefits  include evidence

which could support the presence of a severe mental impairment and arguably, a disability

finding. Nonetheless, records created *within* the relevant period, stating only that Plaintiff

experienced depression and was taking psychotropic medication prescribed by a family

---

[3]A non-severe impairment is one which does not "significantly limit [the] physical
or mental ability to do basic work activities."  20 CFR § 416.921(a).          Section
416.921(b) defines basic work activities as follows:

(1) Physical functions such as walking, standing, sitting, lifting, pushing,
pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing,
and speaking; (3) Understanding, carrying out, and remembering simple
instructions; (4) Use of judgment; (5) Responding appropriately to
supervision, co-workers and usual work situations; and (6) Dealing with
changes in a routine work setting.

doctor, support the ALJ's conclusion that the evidence was insufficient to establish a work-related impairment.

Plaintiff's related argument that the ALJ ought to have accorded greater weight to the treating sources for the relevant period fails for multiple reasons. First, the treating records for this period are limited to the records of a family physician and an eye, ear, and throat specialist, neither of whom opined that Plaintiff was disabled or experienced work-related limitations. Second, the ALJ's finding that Plaintiff experienced the "medically determinable" condition of depression, drawn from the family physician's remarks, comports with Dr. Rozenfeld's findings (Tr. 23, 34). My own review of the treating records from this period does not suggest greater limitations than those found by Dr. Rozenfeld.

Apart from the dearth of mental health records for the period in question, Plaintiff's contention that the record establishes the presence of "relentless" mental health issues from 1987 forward is undermined by her acknowledgment that she worked for another seven years after the brief 1987 hospitalization. (Tr. 246). While records related to the treatment of mental health problems in the first few months subsequent to the DLI would have been probative of Plaintiff's earlier condition, such records either do not exist or have been destroyed. Given the absence of mental health treating records between the DLI and 2008, the ALJ did not err in determining that Plaintiff was not disabled on or before December 31, 1999.

In closing, I note that Plaintiff's qualification for DIB, based on her prior earnings, was premised on establishing disability before December 31, 1999. The ALJ's determination

that Plaintiff was not disabled before the expiration of DIB is well supported.  However, the question of whether the evidence establishes disability *after* that date is not before the Court. If Plaintiff believes that her condition has deteriorated since that time and wishes to reapply for benefits, she faces no deadline for obtaining Supplemental Security Income ("SSI"), provided that she can show disability and financial need.  *Willis v. Sullivan*, 931 F.2d 390, 392, fn. 1 (6th Cir.1991); 42 U.S.C. § 1382.

## CONCLUSION

For the reasons stated above, I recommend Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length

unless by motion and order such page limit is extended by the court.  The response shall

address specifically, and in the same order raised, each issue contained within the objections.


Dated: December 6, 2013                    s/ R. Steven Whalen
                                           R. STEVEN WHALEN
                                           UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on
December 6, 2013, electronically and/or by ordinary mail.

                                           s/Michael Williams
                                           Case Manager to the
                                           Honorable R. Steven Whalen

-11-